IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARLO L. CHAVEZ,

    Plaintiff,

v.                                                    CIV 01-1096 WJ/KBM

JERRY FOSTER, GUSTAVO MEDINA,
RICHARD ACOSTA, and WACKENHUT
CORRECTIONS CORPORATION,

    Defendants.

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

A week ago, District Judge William Johnson informed me that the individual Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction, *Doc. 10,* would be referred to me for a recommended disposition. I recommend that the motion be denied.

*Background*

Plaintiff was an inmate at the Lea County Correctional Facility in October 1999. Defendant Wackenhut was operating the prison and had sent the correctional officer defendants from California to work there temporarily. According to the affidavits attached to their motion, Defendants Medina and Acosta worked in New Mexico for two months and Defendant Foster worked in New Mexico for six months. While in New Mexico they lived in a hotel and on the per diem provided by their employer. They deposited their paychecks in their California bank accounts, where they maintained their family homes and permanent residencies. They considered their assignment in New Mexico "involuntary." *See Doc. 10,* Exhs B-D.

According to the Complaint, Plaintiff was seriously injured when another inmate, Jaime Perez, crawled out of his locked shower stall and stabbed Plaintiff with a knife. Plaintiff alleges Defendants knew (or were recklessly indifferent to the fact) that Perez was violent and his prison gang had threatened Plaintiff and/or other inmates. Despite that knowledge, they permitted Perez to make a "shank" and left him unsupervised in a locked shower stall. After Plaintiff finished his shower, he was handcuffed and escorted toward Perez's shower stall by Defendants Medina and Acosta. Defendant Foster was in the vicinity as well. When the correctional officers saw Perez crawling out of his shower stall with shank in hand, they ran, abandoning Plaintiff to fend off Perez's attack while handcuffed. Thereafter, they allowed Perez to retain the shank he used to attack Plaintiff. *Complaint,* ¶¶ 7-24.

Plaintiff filed this action seeking damages for violation of his Eighth Amendment rights under 28 U.S.C. § 1983 and for negligence under state law. Because this case is a federal question action based on a statute that does not authorize nationwide service of process, Plaintiff acquires personal jurisdiction over Defendants under New Mexico's long-arm statute. *See e.g., Scherer v. Curators of the Univ. of Missouri and Law Sch. Admission Council,* 152 F. Supp.2d 1278, 1281 (D. Kan. 2001) (citing *McChan v. Perry,* 2000 WL 1224844 *1 (10th Cir. 8/31/00)); *see also e.g., Springer v. Balugh,* 2000 WL 1616246 (10th Cir. 10/30/00).

The individual defendants maintain that this Court does not have personal jurisdiction. They do not argue that their alleged conduct falls outside of the long-arm statute and, in fact, the alleged conduct is covered by "the commission of a tortious act within this state" prong. N.M. STAT. ANN. § 38-1-16(A)(2). Nor do they argue that Plaintiff's suit does not arise out of their alleged conduct while in New Mexico. *Id.,* § 38-1-16(C). The only issue here is the final

2

requirement – that the nonresident's contacts with the state must satisfy federal constitutional due process. *E.g., Santa Fe. Technologies, Inc. v. Argus Networks, Inc.,* ___ N.M. ___, 42 P.3d 1221, 1228-29 (Ct. App. 2002) (extent of New Mexico long-arm statute and federal due process are equivalent).

### *Allegations In Complaint Are Considered*

Defendants contend that Plaintiff bears the burden of proving jurisdiction exists and, because Plaintiff did not counter their affidavits, the Court cannot consider the allegations contained in Plaintiff's Complaint. *See Doc. 11* at 6; *Doc. 13* at 2. There are several problems with this argument. First, to support their contention, Defendants' Reply cites a New Mexico Court of Appeals decision which has no bearing on federal civil procedure. They also cite a Tenth Circuit decision that discusses motions to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), where there was a question whether the matter was converted to a summary judgment motion. *See Doc.* 13 at 2. However, the instant motion is under Rule 12(b)(2), the subsection governing motions to dismiss for lack of jurisdiction over the person. *See Doc. 10.* In such cases:

> "The plaintiff bears the burden of establishing personal jurisdiction over the defendant. ***Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.*** If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."

*Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir. 1990) (emphasis added) (quoting *Behagen v.*

*Amateur Basketball Ass'n of the U.S.,* 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied,* 471 U.S. 1010 (1985)); *see also e.g., Garret v. Klinger,* 12 Fed. Appx. 842, 843 (10th Cir. 2001) (not selected for publication in Federal Reporter).

Second, there is nothing in the affidavits that counter the allegations in the Complaint about what the individual Defendants did on the day in question. To reiterate, the Complaint fairly alleges that while working in their capacity as corrections officers in a New Mexico prison, at best Defendants abandoned a handcuffed prisoner in a situation patently dangerous to his safety and, at worst, set him up for the attack. Because their affidavits mention nothing about these allegations, for the purposes of this motion, those allegations will be taken as true and considered in assessing the individual Defendants' contacts with New Mexico.

### *Due Process "Contacts" With New Mexico Sufficient*

Defendants next argue that because they were not "voluntarily' in New Mexico for their temporary assignment, they did nothing that could be considered as "purposefully avail[ing] themselves of the privilege of doing business here." *Doc. 11* at 8; *see also Doc. 13* at 4-5. They further argue that the fact Plaintiff was injured in New Mexico in and of itself does not constitute contact with the state. *Doc. 13* at 6. I find both arguments unavailing and I am not persuaded by either argument or Defendants' attempt to distinguish *Taylor v. Phelan,* 912 F.2d 429 (10th Cir. 1990), *cert. denied,* 498 U.S. 1068 (1991), and bring their case within *Dobbs v. Chevron USA, Inc.,* 39 F.3d 1064 (10th Cir. 1994).

In the federal due process analysis, there is a distinction between "general personal jurisdiction" and "specific personal jurisdiction." *Dobbs,* 39 F.3d at 1068. Because Plaintiff's suit arises directly and inextricably out of Defendants' alleged conduct in New Mexico, this case is not

governed by the general jurisdiction inquiry. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998).

Here, there is specific jurisdiction over the individual Defendants because of their alleged activities on the day in question. They allowed or set-up Plaintiff to be injured. In other words, their alleged acts of commission and omission while in New Mexico were "purposefully directed" toward Plaintiff, a New Mexico resident.

It is well-established that New Mexico has a legitimate interest in providing a convenient forum for its residents who are injured by actors located *outside* of the state, but who nevertheless direct their tortious conduct toward a New Mexico plaintiff. It is not unreasonable for a person who so acts to be haled into New Mexico to answer for his or her conduct. *See Calder v. Jones,* 465 U.S. 783, 789-90 (1984). By the same token, an even stronger argument in favor of jurisdiction lies for persons who while *in* New Mexico, tortiously injury a New Mexico resident, and then leave the state. *C.f., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").

The Tenth Circuit's decision in *Taylor* illustrates how the conduct of someone physically present in the Plaintiff's state will give rise to specific personal jurisdiction. In *Taylor,* a police officer in Missouri was assigned to investigate a crime that occurred in Missouri and involved a member of a family that lived in Kansas. The officer crossed state lines to go to the family's home and assure them the perpetrator would soon be arrested and that the family was safe. This advice turned out to be wrong, as the perpetrator soon thereafter killed some of the family members and

seriously injured others in a fire. Plaintiff sued the officer and others under § 1983 and state law. The Tenth Circuit held that the act of assuring the family it was safe while in their Kansas home was sufficient for specific jurisdiction. The court held:

> The Taylors, of course, do not allege that the defendants shot them or burned their children, but rather they claim that less dramatic, but nonetheless real, acts of negligence occurred in Kansas which ultimately lead to their harm. . . . ***The forum-related contact was the assurance;*** the result of this contact was the Taylor's failure to protect themselves. This claim certainly 'arises out of' and 'results from" [Defendant's] contacts, and we find, therefore, that personal jurisdiction . . . can be exercised consistent with the dictates of due process.

*Id.* at 433 (emphasis added). In comparison to *Taylor,* Defendant's "contacts" with New Mexico, that is their conduct on the day in question, are even more compelling.

The *Dobbs* case upon which Defendants rely is distinguishable. First, *Dobbs* stands for the proposition that the involuntariness of a temporary assignment by an employer is an issue for the general jurisdiction inquiry. The decision held that "[t]here could . . . be no general personal jurisdiction" where Defendants "were present in Wyoming only at the direction" of their employer. *Dobbs,* 37 F.3d at 1068. The Tenth Circuit then went on to assess whether specific jurisdiction exists based on Defendants' conduct while they were in Wyoming. It found that "minor derogatory comments" about one Plaintiff and "unscheduled performance evaluation" of the other Plaintiff where "certain unspecified derogatory comments" were made. *Id.* The court found these minor incidents "can hardly be regarded as having significant impact in Wyoming." *Id.*

Here, I can hardly characterize Defendants' alleged conduct as minor. Rather, I think it is plain that correctional officer conduct *vis-a-vis* New Mexico inmates should be regarded of

6

having a significant impact in New Mexico. I further find that even if Defendants came to New Mexico involuntarily, how they chose to conduct themselves in guarding New Mexico prisoners while here is an entirely separate matter, and exercising specific jurisdiction is consistent with due process under *Taylor.*

### *Assertion of Jurisdiction Is Reasonable*

Even if there are contacts with the state sufficient to assert jurisdiction, this Court must nonetheless determine if doing so would be "so unreasonable as to violate 'fair play and substantial justice.'" *OMI,* 149 F.3d at 1095. There are five factors to consider in this regard. *Id.* Plaintiff devotes a substantial portion of his response to this inquiry. Among other things, he points out: he is indigent, while Wackenhut attorneys have undertaken the defense of the individual Defendants; New Mexico has a strong interest in interest in resolving a dispute concerning how its prisons are run by outside contractors and their employees, whereas neither California nor any other state has the same interest; and nonparty witnesses are located in New Mexico.

Defendants' reply that it is equally as onerous for them to travel to New Mexico as it is for Plaintiff to travel to California, and that California has many competent attorneys who could assist Plaintiff with his case. At most this contention establishes that two of the factors are equally balanced.

Defendants further argue that New Mexico has *no* interest in this case. They cite a New Mexico state court decision that found no minimum contacts for Texas defendants, where a New Mexico resident went to El Paso for surgery but later developed an infection while home in New Mexico. State court decisions are not binding on federal constitutional matters and, in any event,

the decision has no persuasive value. It says nothing about New Mexico's interest in how its prisons are run with regard to the "fair play and substantial justice" part of the due process inquiry. *See Cronin v. Sierra Medical Center,* 129 N.M. 521, 10 P.3d 845 (N.M.App.), *cert. denied,* 129 N.M. 519, 10 P.3d 843 (N.M. 2000), *and cert. denied,* 532 U.S. 921 (2001).

Though I find the contacts with New Mexico are substantial, even if a defendant's contacts with the forum state are somewhat weak, the five factors can tip the balance in favor of finding reasonableness of jurisdiction. *OMI,* 149 F.3d at 1095. For the reasons discussed in Plaintiff's response, I find the factors would so tip the balance here if Defendants' contacts are considered less than substantial.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the motion to dismiss *(Doc. 10)* be denied.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE